IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE HILL | : | CIVIL ACTION |
| | : | NO. 09-05463 |
| and | : | |
| | : | |
| DAVID ELLIS | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY | : | |

O'NEILL, J.                                               SEPTEMBER 1, 2010

## MEMORANDUM

Plaintiffs George Hill and David Ellis sued defendant Southeastern Pennsylvania Transportation Authority alleging violations of Title VII[1] of the Civil Rights Act of 1964, as codified at 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. Plaintiffs also allege that defendant intentionally inflicted emotional distress upon them. On January 19, 2010, defendant filed a motion to dismiss plaintiffs' complaint for failure to state a claim.[2] Presently before me are defendant's brief in support of its motion to dismiss, plaintiffs' brief in opposition to dismissal and defendant's reply. For the following reasons, I will grant defendant's motion to dismiss. However, I will also grant plaintiff leave to amend.

---

[1] In count I of their complaint, plaintiffs allege violations of Title VIII. Apparently recognizing the obvious typographical error, both parties address this claim as though it had been brought under Title VII. I will do the same.

[2] This case was transferred to my docket from the docket of a colleague on June 22, 2010.

BACKGROUND[3]

Hill and Ellis were hired by defendant in 1994. Compl. ¶ 7, 9. Both were appointed "buildings painter first class" by October 1995. Compl. ¶ 7, 9. They each held that title until March 20, 2008 when they were terminated by defendant. Compl. ¶ 11. Their terminations, and the events leading up to them, give rise to this lawsuit.

On January 21, 2008, Joseph Rollo, a SEPTA supervisor, ordered plaintiffs to report to the Fern Rock Shop boiler room. Compl. ¶ 12. Rollo and Joseph Brennan, SEPTA's director of facilities, instructed plaintiffs that they were to use their paint sprayers to paint the boiler room. Compl. ¶ 13. When they arrived at the worksite, however, plaintiffs determined that the paint sprayers were inappropriate for such a project and that they had not been provided with the equipment and materials necessary to complete the job. Compl. ¶¶ 15-16. Rollo, apparently unpersuaded by plaintiffs' objections, ordered them to "spray the fucker." Compl. ¶ 17.

Plaintiffs were unable to complete the job before the close of business on January 21, 2008. Compl. ¶¶ 20-22. When they reported to the boiler room the next morning, they were met by Rollo who did not reprimand them about the condition of the room because he understood that the job had not yet been finished. Compl. ¶ 23. Nevertheless, approximately 30-45 minutes later, Rollo ordered plaintiffs to leave the Fern Rock Shop immediately and report to another job site. Compl. ¶ 25. They left without finishing the job or cleaning up the worksite. Compl. ¶ 26. Rollo and Brennan subsequently returned to the boiler room and photographed the condition in which plaintiffs had left it. Compl. ¶ 27. Plaintiffs were never ordered to return to the Fern Rock

---

[3] In reciting the factual background of this case, I take as true all well-pleaded factual allegations in plaintiff's amended complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (setting forth post-Twombly standard of review).

Shop. Compl. ¶ 32.

As a result of plaintiffs' failure to complete the job at the Fern Rock Shop they were charged with five Authority Standard Rule violations. Compl. ¶ 11. On February 27, 2008, Brennan conducted an informal hearing with respect to such charges and concluded that plaintiffs should be terminated. Compl. ¶ 34. Following a formal hearing on March 13, 2008, Brennan's decision was upheld. Compl. ¶¶ 35-36. Plaintiffs' labor union appealed Brennan's decision, but it was "upheld at all levels." Compl. ¶¶ 37, 40. Plaintiffs assert that their terminations were based upon "false or ambiguous testimony, inconsistent statements, contradictory evidence and deliberate indifference to the ongoing violations of their Civil Rights." Compl. ¶ 39.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). The Court of Appeals has recently made clear that after Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct.

1937, 1955, 173 L. Ed. 2d 868 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11 (quoting Iqbal, 129 S. Ct. at 1950). The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

## DISCUSSION

I.     Plaintiffs Concede that their Section 1981, Intentional Infliction of Emotional Distress, and Punitive Damages Claims Must Be Dismissed

Defendant argues that all four counts in the complaint should be dismissed. Plaintiffs concede that their claims under section 1981 should be dismissed. See Pl.'s Br. at 7. Section 1981 does not provide a private right of action against state actors. See McGovern v. City of

4

Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009) ("we hold that the express cause of action for damages created by [section] 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in [section] 1981 by state governmental units.") (internal quotation marks omitted). Because defendant is a state actor, see 74 Pa. Cons. Stat. §§ 1701-85; Poli v. Southeastern Pennsylvania Transp. Auth., No. 97-6766, 1998 WL 405052, at *12 (E.D. Pa. July 7, 1998), plaintiff's claims under 1981 will be dismissed.

Plaintiffs also concede that their claim for intentional infliction of emotional distress must be dismissed. See Pl.'s Br. at 7. The case law is clear that, subject to certain inapplicable exceptions, SEPTA is entitled to sovereign immunity for intentional torts. See Pa. Cons. Stat. § 2310; McCoy v. Southeastern Pennsylvania Transp. Auth., No. 01-5881, 2002 WL 376913, at *2 (E.D. Pa. Mar. 1, 2002) ("Transportation Authority negligence and intentional infliction of emotional distress are not within the statutory exceptions [to SEPTA's sovereign immunity]."). Plaintiffs' claim of intentional infliction of emotional distress will thus be dismissed.

Finally, plaintiffs concede that their claim for punitive damages must be dismissed. See Pl.'s Br. at 7. Because defendant is immune from claims for punitive damages, see Boice v. Southeastern Pennsylvania Transp. Auth., No. 05-4772, 2007 WL 2916188, at *16 (E.D. Pa. Oct. 5, 2007) (finding that SEPTA is immune from punitive damages because it is a state agency), plaintiffs' claim for punitive damages will be dismissed.

II.  Plaintiffs Have Alleged Sufficient Facts To Support their Title VII Claims

Defendant argues that plaintiff has failed to allege facts that make out a prima facie case of race-based employment discrimination under Title VII. See Def.'s Br. at 4. Plaintiff disagrees. See Pl.'s Br. at 7.

The burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), applies to plaintiffs' claim of employment discrimination. See Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). The plaintiff must, at the outset, establish a prima facie case of discrimination: (1) she was a member of a protected class; (2) she was qualified for the position she sought; (3) she was subject to an adverse employment action despite being qualified; and (4) the adverse employment action occurred under circumstances that gave rise to an inference of unlawful discrimination. See Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003); Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (1995).

Here, defendant argues that plaintiffs have alleged no facts that establish their terminations occurred "under circumstances that gave rise to an inference of unlawful discrimination." Sarullo, 352 F.3d at 797. Plaintiffs argue that this element of the prima facie case has been satisfied by allegations in the complaint that, in 2001, two white SEPTA employees–John Biedrzycki and Joseph Donohue–were not terminated after causing $30,000 worth of damage to overhead power lines and then leaving the scene of the accident. Compl. ¶¶ 51-57. An inference of unlawful discrimination arises where "similarly situated persons not within the protected class were treated more favorably [than plaintiffs]." See id. at 798 n.7; Davila v. Victory Sec. Agency, No. 09-130, 2010 WL 2636057, at *3 n.2 (W.D. Pa. June 28, 2010).

The relevant question, then, is whether the individuals referenced in plaintiffs' complaint were similarly situated to plaintiffs. For two individuals to be similarly situated, they ordinarily must "[have] dealt with the same supervisor, [have been] subject to the same standards, and

[have] engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Houston v. Easton Area School Dist., 355 F. App'x 651, 654 (3d Cir. 2009) (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)). This inquiry is "highly factually dependant." See Abbasi v. SmithKline Beecham Corp., No. 08-277, 2010 WL 1246316, at *5 (E.D. Pa. Mar. 25, 2010).

It is evident that Biedrzycki and Donohue did not engage in exactly the same conduct as plaintiffs. Without the benefit of an evidentiary record, however, I am unable to draw the fact-driven conclusion that the circumstances surrounding their discipline are materially distinguishable from the circumstances surrounding plaintiffs' discipline. Discovery into the details of the misconduct and resulting discipline of Biedrzycki and Donohue will undoubtedly clarify this issue. I will therefore deny defendant's motion to dismiss on this ground.[4]

Defendant also argues, however, that plaintiffs have not alleged that they are members of a protected class. Plaintiffs concede that they have not expressly alleged their membership in a protected class but urge me to infer that they are African American from the fact that Rollo and Brennan are white. See Pl.'s Br. at 3. I find that such an inference would be unreasonable. In

---

[4] Although I am compelled to deny the motion to dismiss on this ground, I admit to some concern over plaintiffs' proposed comparator evidence. First, the incident involving Biedrzycki and Donohue occurred approximately seven years before the incident giving rise to this lawsuit. Such a substantial temporal gap makes it less likely that plaintiffs were subject to the same standards and dealt with the same supervisor. See Houston, 355 F. App'x at 654. Second, the facial differences between the misconduct of Biedrzycki and Donohue and that of plaintiffs render it unlikely that plaintiffs will be able to produce evidence showing that "all of the relevant aspects of [their] employment situation [were] nearly identical to those of the . . . employees whom [they] allege[] were treated more favorably." See Solomon v. Philadelphia Newspapers, Inc., No. 05-05326, 2008 WL 2221856, at *15 (E.D. Pa. May 21, 2008) (citing Miller v. Delaware, Dept. of Prob. & Parole, 158 F. Supp. 2d 406, 411 (D. Del. 2001)). In order to survive a motion for summary judgement, plaintiffs must, at minimum, produce evidence that addresses these concerns.

order to make out a prima facie case, plaintiffs must expressly allege such a fundamental fact. I will accordingly dismiss the complaint with leave to amend.

    An appropriate Order follows.